IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA SHELTON,                )
                              )
        Plaintiff,             )
                              )
    vs.                        )   No. 05 C 5955
                              )
CAROL SCHNEIDER, et al.,      )
                              )
        Defendants.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Shelton brought an action against Carol Schneider, Scott Keating, and Advocate Christ Hospital and Healthcare Corporation (ACHC), on October 18, 2005, requesting leave to proceed *in forma pauperis*, appointment of counsel, and relief for alleged violations of her civil and statutory rights. After recognizing that plaintiff sufficiently evidenced financial need under 28 U.S.C. § 1915(a), we dismissed her complaint, with leave to amend, for failure to state a claim upon which relief could be granted. Plaintiff amended her complaint, adding defendants Cook County State's Attorney Richard Divine, Cook County Assistant State's Attorney Peter Troy, the County of Cook, Oak Lawn Police Officer Weinert, Oak Lawn Police Sergeant Vetter, Oak Lawn Police Chief Smith, and the Village of Oak Lawn, and further explaining her allegations. As we have already made a finding of indigence (Shelton v. Schneider, 2005 U.S. Dist. LEXIS 26628 (N.D.Ill.2005)), we limit our analysis to whether plaintiff's amended complaint sufficiently states her claims.

We will dismiss the complaint if we determine that the action is frivolous or malicious, it fails to state a claim upon which relief may be granted, or seeks damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); Alston v. Debruyn, 13 F.3d 1036, 1039 (7th Cir.1994). For purposes of this decision, we take plaintiff's allegations as true. *See* Zimmerman v. Tribble, 226 F.3d 568, 571 (7th Cir.2000). And given that she appears *pro*

*se*, we liberally construe the pleadings. *See* <u>Henderson v. Sheahan</u>, 196 F.3d 839, 845-46 (7th Cir.1999).

## BACKGROUND

Although we discussed the complete factual background in our previous opinion, because many of plaintiff's claims are factually driven, we restate relevant portions of the background, garnered from plaintiff's amended complaint. Plaintiff was a staff physician at the private hospital Advocate Christ Hospital, part of Advocate Health Care, which she alleges "has a history of discrimination against minority persons with health care coverage under Medicaid" (cplt., ¶ 13). On February 5, 2002, plaintiff, a well-known advocate for foster children, took protective custody of two children pursuant to the Illinois Abuse and Neglect Child Reporting Act, 325 ILCS 5/5, based on her suspicions of medical neglect at a Department of Children and Family Services (DCFS) shelter. Hospital staff, after speaking with DCFS staff, released the children back to DCFS on February 6, 2002. Thereafter, plaintiff attempted to advocate for the children at a Cook County Juvenile Court hearing, but was forcibly removed from the proceedings at the judge's direction. For the next week, DCFS staff and/or Public Guardian staff communicated with defendant Schneider and/or other ACHC staff regarding plaintiff's conduct concerning the children, falsely stating that plaintiff was not a legal temporary guardian of the children. After various disagreements with defendant Schneider and other ACHC staff, plaintiff's medical staff privileges were suspended and ultimately revoked. These actions were taken pursuant to the advice of ACHC's Medical Executive Committee, which failed to afford plaintiff adequate procedures for challenging the hospital's actions. Plaintiff claims that this treatment was in direct response to her advocacy on behalf of minority and Medicaid patients, and under the false pretenses that she acted inappropriately in exercising protective custody over the foster children (cplt., ¶ 15).

Prior to the revocation of plaintiff's medical privileges, but upon hearing rumors of the impending suspension, plaintiff went to the hospital to discuss her situation with ACHC administrators. She was refused a meeting with defendant Schneider, and was asked by security to leave. On February 9, 2002, plaintiff sought emergency room medical attention from ACHC Dr. Gizardas, for injuries she sustained due to the rough treatment by the sheriff at the juvenile court proceedings. Although this injury did not stem from defendants' conduct, petitioner alleges receiving substandard care and being illegally restrained at the hospital, resulting in further injuries. On February 11, 2002, plaintiff again attempted to meet with ACHC administrators, specifically defendant Schneider, who eventually arrived, yelled at plaintiff and ordered her removal, in violation of state law. Thereafter, upon Schenider's falsified and defamatory criminal complaint, plaintiff was arrested and handcuffed for criminal trespass to property. She contends that the police did not allow her to speak in her defense, did not pass along exculpatory information to the prosecutors, and were negligent in their investigation. In the face of her innocence, plaintiff alleges that defendant state's attorneys illegally proceeded to prosecute her, but were unsuccessful as plaintiff was found not guilty at her criminal trial. Additionally, plaintiff contends that defendant police officers violated her right to equal protection under the law by refusing to investigate or press charges against Dr. Gizardas or defendant Schneider for their allegedly illegal treatment of plaintiff.

As a result of the alleged defamation of her character, illegal suspension of her medical license and malicious prosecution, plaintiff asserts that "she is blacklisted at all hospitals in the United States and unable to obtain medical staff privileges anywhere ... thus essentially destroying her livelihood under false pretenses and destroying her ability to participate in free trade regarding her medical services. This and the resulting defamation of Plaintiff's character ... to other physicians and members of the community has resulted in the loss of

Plaintiff's home, business, all savings, false arrest, emotional distress, battery by police for asking for medical assistance and emotional and financial stress to her family and patients" (cplt., ¶ 83). Plaintiff alleges violations of her civil rights under 42 U.S.C. §§ 1981, 1983 and 1985, and pendent state law tort claims of intentional infliction of emotional distress (IIED), malicious prosecution and *respondeat superior.*

## DISCUSSION

### Sections 1981 and 1985 Claims

In our previous opinion we held that plaintiff's claims arising under §§ 1981 and 1985 were foreclosed because plaintiff, a Caucasian, did not sufficiently allege that defendants' actions, as directed at her, were racially discriminatory. Shelton, 2005 U.S. Dist. LEXIS 26628. Plaintiff now alleges that she is a well-known advocate for "foster children, mentally and physically handicapped children and children in the care of the Illinois Department of Children and Family Services;" that she has testified and filed complaints against defendant ACHC, and has worked closely with African-American and Hispanic children (cplt., ¶ 14). In reading her amended complaint as a whole, plaintiff sufficiently claims that defendants' allegedly illegal actions were taken in retaliation against plaintiff's aggressive advocacy of children, specifically children of color.

In Sullivan v. Little Hunting Park, Inc., 396 U.S. 229 (1969), the Supreme Court held that a white plaintiff could bring an action pursuant to § 1982, where plaintiff's expulsion from a community park corporation arose because he assigned his share of the corporation to a black lessor. Courts have relied on Sullivan's rationale to allow § 1981 claims to proceed where a white plaintiff is the "direct target of discrimination," based on the plaintiff's "relationship to, association with, or advocacy of minorities." Bielello v. Kum & Go, LLC., 374 F.3d 656, 660 (8th Cir.2004); Albert v. Carovano, 851 F.2d 561, 572-73 (2d Cir.1988);

Fiedler v. Marumsco Christian School, 631 F.2d 1144, 1150 (4th Cir.1980). *See also* Benjamin v. Aroostook Medical Center, 57 F.3d 101, 105 (1st Cir.1995) (differentiating a non-justiciable case by a plaintiff asserting another party's rights with a justiciable case in which plaintiff was the direct target of defendant's discriminatory action); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir.1989) (white plaintiff had standing under § 1981 to bring a discrimination claim based on actions taken against him because of his association with blacks); Jones v. Sabis Educational Systems, Inc., 52 F.Supp.2d 868, 876 (N.D.Ill.1999) (white plaintiff had standing to sue under § 1981 where the complaint alleged discrimination based on plaintiff's objection to discrimination against other minority employees). The same has generally held true for § 1985 claims. *See* Cutting v. Muzzey, 724 F.2d 259, 260 (1st Cir.1984); Richardson v. Miller, 446 F.2d 1247 (3d Cir.1971); Schwartz v. City of Chicago, 1988 WL 1419, *4 (N.D.Ill.1988); Yesteryears, Inc. v. Waldorf Restaurant, Inc., 730 F.Supp.1341, 1354 (D.Md.1989). Thus, because plaintiff claims personal discrimination in retaliation for her advocacy on behalf of protected minorities, neither her § 1981 nor her § 1985 claim fails solely because plaintiff herself is not a protected minority.

We now turn to the merits of plaintiff's §§ 1983 and 1985 claims. Traditionally, in order to state a § 1981 claim, plaintiff must allege that she is a member of a racial minority; defendants intended to discriminate on the basis of race; and the discrimination involved one of the activities enumerated in § 1981. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir.1996). Section 1981 establishes four protected interests, including "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." Donlyn Distribution, Inc. v. BP Amoco Corp., 2002 WL 31178008, *3 (N.D.Ill.2002). Plaintiff satisfies the first element by alleging that defendants Schneider and ACHC retaliated against

her due to her advocacy on behalf of minority children. Plaintiff also satisfies the additional elements, claiming intentional and discriminatory denial of her right to make and enforce her employment contract. Thus, we allow plaintiff's claim to proceed only as against defendants Schneider and ACHC.

Although plaintiff does not specifically state a § 1985 claim in her amended complaint, she alludes to one in her motion and alleges facts sufficient to state a claim under § 1985(3), which prevents conspiracies to deprive a person of her rights or privileges. In order to state a claim under § 1985(3), plaintiff must allege a conspiracy intending to deprive plaintiff of the equal protection of the laws or equal privileges and immunities under the law; an overt act in furtherance of that conspiracy; and an injury to plaintiff or plaintiff's property or deprivation of a constitutionally-protected right or privilege. Bryant v. Polston, 2000 WL 1670938, *7 (S.D.Ind.2000) (*citing* Griffin v. Breckenridge, 403 U.S. 88. 103-03 (1971)). Plaintiff alleges that "the CEO of Advocate Christ Hospital, along with other unknown persons, purposely railroads off the staff physicians who bring in large numbers of Medicaid patients in order to improve their bottom line. The hospital keeps records of the numbers of patients and the types of insurance these patients have that are brought in by each doctor .... They use this information to discriminate against physicians such as Plaintiff, whose minority Medicaid patients are a burden to the hospital. Plaintiff's medical staff privileges were unlawfully revoked, based on false pretenses, partially for this reason" (cplt., ¶ 15). Plaintiff sufficiently pleads intent, and alleges that she was suspended and her medical privileges revoked, both of which constitute overt acts. Thus, we find that plaintiff's amended § 1985 claim can proceed as against defendants Schneider and ACHC.

Section 1983 Claims

Plaintiff also raises § 1983 claims for violations of her Fourth, Fifth and Fourteenth

Amendment rights. In a previous opinion we dismissed those claims for failure to sufficiently allege the state action required under § 1983, which requires that defendants' actions must be taken "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." Although private actors may be considered state actors for the purposes of § 1983, if they conspire with state actors to deprive another of her constitutional rights (*see* Brokaw v. Mercer County, 235 F.3d 1000, 1016 (7th Cir.2000)), plaintiff must allege more than "mere allegations of a conspiracy," Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir.1985). Although plaintiff names several state actors as defendants in her amended complaint, she again fails to sufficiently state a claim under § 1983. We will address each factual claim under which plaintiff attempts to allege a § 1983 violation of her constitutional rights.

First, plaintiff alleges violation of her Fourth Amendment right to be free from unreasonable arrest, search and seizure, based on the actions of defendants Schneider, Keating, and ACHC cplt., ¶ 93). Such an allegation cannot proceed because plaintiff has not alleged a conspiracy between defendants Schneider, Keating or ACHC, with any state actor, sufficient to raise the private actors' actions to state action for purposes of § 1983 liability. A violation of state law (cplt., ¶ 60) cannot be the basis for any liability under § 1983. Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir.1986). Nor can plaintiff's assertion that her arrest was predicated on defendant Schneider's criminal complaint of "shear slander and fantasy"(cplt., ¶ 68) serve as the grounds for a § 1983 claim against defendant Schneider, because a private citizen cannot be considered a state actor simply by making a false complaint to the police, upon which the police act. *See* Gramenos, 797 F.2d at 435 (holding that "[a]lthough private parties call on the aid of state law 'without the grounds to do so,'" when the private decision may 'in no way be attributed to a state rule or a state decision,' the private

parties are not state actors").

Neither can that allegation that "[d]efendants Weinert and Vetter were negligent in not investigating the false allegations of complainant and not giving Plaintiff an opportunity to refute the complaint with factual information that they could verify" (cplt., ¶ 69) form the basis of a § 1983 claim. The existence of probable cause is an absolute bar to a § 1983 claim for false arrest. Friedman v. Village of Skokie, 763 F.2d 236, 239 (7th Cir.1985); Woods v. Willingham, 1995 WL 225721, *4 (N.D.Ill.1995). And the signed complaint of a private citizen – here, Schneider – provides the arresting officer with probable cause for arrest. Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir.1999) ("Consequently, 'as long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent'"). *See also* Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 745-46 (7th Cir.2003) ("Once an officer has established probable cause on every element of a crime, he need not continue investigating to test the suspect's claim of innocence"). Thus, plaintiff's § 1983 Fourth Amendment claim for false arrest against defendant police officers must fail.

Second, plaintiff alleges violation of her rights based on "selective prosecution" by the Oak Lawn police, for their failure to arrest Dr. Girzadas or defendant Schneider upon plaintiff's complaints. At the outset, we dismiss plaintiff's contention that defendant police officers conspired with ACHC administrators not to prosecute Gizardas or Schneider. The decision to prosecute lies with the prosecutor, not the police. Davis v. Owens, 973 F.2d 574, 577 (7th Cir.1992) ("It is not the police officer's duty to make legal conclusions; the prosecutor makes the legal decision whether to charge a suspect with a crime"). Next, we note that individuals do not have a constitutional or due process right to be protected from other

individuals in the community. *See* <u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189 (1989). Thus, plaintiff does not have a constitutional right to have the police investigate an allegation of illegal conduct of another individual citizen. *See* <u>Johnson v. City of Evanston, Ill.</u>, 250 F.3d 560, 563 (7th Cir.2001).[1]

Third, plaintiff alleges violations of her civil rights, Illinois Supreme Court Code of Conduct, and felony official misconduct by defendant prosecutors Divine and Troy for their decision to prosecute plaintiff, despite her innocence (cplt., ¶¶ 84-85). Such an allegation cannot stand, however, because prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process," even if the decisions exceed the prosecutor's authority. <u>Smith v. Power</u>, 346 F.3d 740, 742-43 (7th Cir.2003). *See also* <u>Goldschmidt v. Patchett</u>, 686 F.2d 582, 586 (7th Cir.1982) (absolute immunity extends to a prosecutor's decision to prosecute or not to prosecute).

Finally, there are two outstanding § 1983 issues vaguely raised in plaintiff's complaint. First, a general allegation against Cook County and Village of Oak Lawn for violations of plaintiff's rights. Such claims, however, are limited by the Supreme Court's analysis in <u>Monell v. Dep't of Social Services of City of New York</u>, 436 U.S. 658 (1978), under which liability will be imputed to a municipality only where an official policy or custom caused the constitutional violation. <u>Woods v. City of Michigan City, Ind.</u>, 940 F.2d 275, 277 (7th Cir.1991). Therefore, we dismiss any § 1983 claim as against defendants Cook County and Village of Oak Lawn.

Second, plaintiff has made vague allegations of a violation of her right to trade under

---

[1] Plaintiff also alludes to allegations against defendant police officers regarding their decisions to investigate her case and forward information to state prosecutors. The decision to accept plaintiff's complaints or information is discretionary, however, and therefore, gives rise to the doctrine of qualified immunity. And because a police officer does not have a constitutional duty to "uncover every piece of exculpatory information during his investigation" (<u>Tangwell v. Stuckey</u>, 135 F.3d 510, 514 (7th Cir.1998) (defining qualified immunity to "protect[] 'public officials performing discretionary functions ... against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known'")), defendant police officers cannot be held liable for damages under § 1983 for their alleged failures in the investigation of plaintiff.

the commerce clause. This is a change from her previous complaint, which alleged multiple violations of the Health Care Quality Improvement Act of 1986 (HCQIA). We previously dismissed that claim, finding that HCQIA does not afford aggrieved physicians a private cause of action. Plaintiff's complaint continues to assert various violations of the HCQIA, and states that "[a]lthough the HCQIA may not invoke a constitutional right, the Commerce Clause does invoke a right to trade that is violated by the Defendants in this case and therefore, there is a cause of action under § 1983 regarding the Commerce Clause" (motion, ¶ 6). Although the Supreme Court has held that a plaintiff can bring a § 1983 claim for violation of the commerce clause (Dennis v. Higgins, 498 U.S. 439 (1991)), any § 1983 claim requires state action, and plaintiff has failed to allege adequate state action with regard to her ability to practice medicine.

### Pendant State Law Claims

Additionally, plaintiff alleges pendent state law claims for IIED, malicious prosecution, and *respondeat superior* liability for Cook County and Village of Oak Lawn. At the outset, we note that plaintiff's state law tort claims are barred by the statute of limitations. Under Illinois law, tort claims brought against local entities or their employees are barred by a one-year statute of limitations (745 ILCS 10/8-101) and tort claims brought against private entities or citizens are barred by a two-year statute of limitations (735 ILCS 5/13-202).[2] As a statute of limitations defense is an affirmative defense, however, we will not dismiss for untimeliness at this stage. We address each state law claim in turn.

---

[2] Plaintiff argues that "[t]he civil rights claims are not untimely, because Plaintiff believes that she can prove fraud involving these violations, which extends the statute of limitations to five years under Illinois law" (motion, ¶ 5). Plaintiff is seemingly referring to 735 ILCS 5/13-205, which states, "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." Although this is the statute generally used for fraud, it does not apply to the alleged torts of IIED, malicious prosecution, or any federal civil rights claim.

To successfully plead a claim for IIED, plaintiff must plead that (1) defendants' conduct was extreme and outrageous; (2) defendants intended to inflict severe emotional distress or knew there was a high probability that severe emotional distress would result from their conduct; and (3) defendants' conduct actually caused severe emotional distress. Tuite v. Corbitt, 830 N.E.2d 779, 789 (Ill.App.Ct.2005). A claim for IIED will only be successful where the conduct "is so outrageous and extreme that it goes beyond all possible bounds of decency," and the distress inflicted is so "severe that no reasonable person could be expected to endure it." Id. at 899-900. Plaintiff does not specify the factual allegations she views as extreme and outrageous, but states that "[t]he conduct and actions as described in this complaint of all Defendants were extreme and outrageous, were done intentionally, willfully, wantonly, and/or knowing there was a high probability that their conduct would cause Plaintiff severe emotional distress as set forth above" (cplt., ¶ 97).

Although a claim for IIED is fact-specific, it can be dismissed on the pleadings. See Tuite, 830 N.E.2d 779 (dismissed on a 2-615 motion); Gleich v. Tastefully Simple, Inc., 2005 WL 3299187 (N.D.Ill.2005) (dismissed on a 12(b)(6) motion). Although plaintiff pleads all elements of an IIED claim, we must ensure that plaintiff alleges each element for each of the eleven named defendants. She does not. First, we dismiss the IIED claim as it applies to Defendants Divine and Troy, as they enjoy absolute immunity for their actions as prosecutors, and plaintiff has failed to allege that they took any actions outside the scope of their prosecutorial roles. Second, we dismiss the IIED claim against defendants Weinert, Vetter, Kaufman, and Smith because the only actions allegedly taken by them relate to the plaintiff's arrest and investigation, and the failure to investigate Schneider or Gizardas (see cplt., ¶¶ 59, 60, 69, 71). No alleged action rises to the level of extreme and outrageous conduct, and we therefore dismiss the IIED claim as it pertains to them. Third, we dismiss the IIED claim as

to defendants Cook County and Village of Oak Lawn, as it can only arise out of the doctrine of *respondeat superior*. Because we have dismissed the IIED claim for all actors who are employed by either defendant, there is no underlying cause of action for a *respondeat superior* claim against either defendant. *See* Holmes v. Sood, 2005 WL 3436389, *12 (N.D.Ill.2005). Finally, we dismiss the IIED claim as it pertains to defendant Keating. Although plaintiff makes several references to ACHC security employees, she does not allege any specific actions taken or supervised by Keating. As to defendants Schneider and ACHC, taking all allegations as true and drawing inferences in favor of plaintiff, plaintiff sufficiently alleges outrageous conduct, intent and injury. *See* Neurosurgery and Spine Survery, S.C. v. Goldman, 790 N.E.2d 925, 931 (Ill.App.Ct.2003) ("A malicious, outrageous lie may even give rise to a cause of action for intentional infliction of emotional distress"). Therefore, her IIED claim can only proceed against defendants Schneider and ACHC.

To successfully state a claim of malicious prosecution under Illinois law, plaintiff must plead: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceedings in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." Patterson v. Burge, 328 F.Supp.2d 878, 900 (N.D.Ill.2004) (*citing* Ritchey v. Maskin, 376 N.E.2d 991, 993 (1978)). And "[i]f no logical connection can be drawn between the defendant's actions and the plaintiff's prosecution, then the malicious prosecution fails as a matter of law" *Id.* Just as plaintiff's IIED claim failed to allege all elements against each defendant, plaintiff's malicious prosecution claim also fails as against the majority of named defendants. Defendants Divine and Troy must be dismissed under the doctrine of absolute prosecutorial immunity. Defendants Weinert, Vetter, Kaufman and Smith must be dismissed because they had probable cause to arrest and investigate plaintiff.

Defendants Cook County and Village of Oak Lawn must be dismissed because there is no underlying cause of action on which they can be held liable under the doctrine of *respondeat superior*. Defendant Keating must be dismissed because plaintiff does not allege that he commenced or continued judicial proceedings against plaintiff – alleging that security personnel removed plaintiff from the hospital upon the hospital's orders is insufficient to support a claim of malicious prosecution. Defendant ACHC must also be dismissed because plaintiff has failed to allege the first element of malicious prosecution. The actions taken by the Medical Executive Committee with regard to plaintiff's medical license are not judicial proceedings as required under the elements of a malicious prosecution claim.[3] *See* Greer v. DeRobertis, 568 F.Supp.1370, 1376 (N.D.Ill.1983) (holding that prison disciplinary hearings are not considered judicial proceedings for the purposes of a malicious prosecution claim). Because Illinois courts do not favor actions for malicious prosecution and have strictly construed the claim (*see id.*; Keefe v. Aluminum Co. of America, 519 N.E.2d 955, 956 (Ill.App.Ct.1988); Franklin v. Grossinger Motor Sales, Inc., 259 N.E.2d 307, 309 (Ill.App.Ct.1970)), we refrain from expanding it to private internal medical review committee hearings. Plaintiff has successfully pled a malicious prosecution claim against Schneider, alleging that she filed a criminal complaint against plaintiff, making knowing and false representations that led to plaintiff's prosecution. Therefore, her malicious prosecution claim can only proceed against defendant Schneider.

Finally, plaintiff asserts claims against Cook County and Village of Oak Lawn for *respondeat superior*. The doctrine of *respondeat superior* exists to hold a principal liable for the tortious actions of his agent who caused plaintiff's injury, even if the principal did not

---

[3] Because plaintiff makes specific *respondeat superior* claims against Cook County and Village of Oak Lawn, we can only assume that her allegations against ACHC arise from the ACHC Medical Executive Committee's actions, and not under the doctrine of *respondeat superior* for actions taken by defendants Schneider and/or Keating.

actually engage in injurious conduct. <u>Walden v. City of Chicago</u>, 391 F.Supp.2d 660, 680 (N.D.Ill.2005). Under that doctrine, however, there must be an underlying claim against the agent to maintain a *respondeat superior* claim against the principal. <u>Holmes</u>, 2005 WL 3436389 at *12. Therefore, as we have dismissed all tort claims against all agents of both Cook County and Village of Oak Lawn, we must also dismiss the *respondeat superior* claim against the principals.

## CONCLUSION

For the foregoing reasons, we dismiss plaintiff's complaint with respect to all claims against defendants Keating, Divine, Troy, County of Cook, Weinert, Vetter, Kaufman, Smith and Village of Oak Lawn, and all claims arising under § 1983. We also dismiss plaintiff's malicious prosecution claim as against defendant ACHC. We allow plaintiff's complaint to proceed as to her §§ 1981, 1985, and IIED claims, as against defendants Schneider and ACHC, and the malicious prosecution claim as against defendant Schneider. Plaintiff's motion for appointment of counsel is denied.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Jan. 4, 2006.